## ADAM DUPERRY v. ALBERT SOLNIT, COMMISSIONER OF MENTAL HEALTH AND ADDICTION SERVICES
## (SC 16618)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 11—officially released August 13, 2002

*Jo Anne Sulik*, assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, *Vicki Melchiorre*, senior assistant state's attorney, and *George Ferko*, assistant state's attorney, for the appellant (respondent).

*William W. Fick*, certified legal intern, with whom were *Brett Dignam* and, on the brief, *Scott L. Shuchart*, law student intern, for the appellee (petitioner).

*Monte P. Radler*, public defender, with whom, on the brief, was *Gerard A. Smyth*, for the office of the chief public defender, as amicus curiae.

*Opinion*

VERTEFEUILLE, J. The principal issues in this appeal are whether the habeas court: (1) improperly established a new constitutional rule in a collateral proceeding in contravention of the principle announced in *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), by concluding that a criminal defendant who pleads not guilty with the affirmative defense of mental disease or defect[1] must be canvassed as though he is pleading guilty to ensure that his plea is made knowingly and voluntarily; and (2) improperly concluded that the petitioner in the present case was not barred from raising for the first time in the habeas proceeding the claim that he had not waived his right to a jury trial knowingly and voluntarily. The respondent, Albert Solnit, the commissioner of mental health and addiction services (state), appeals from the judgment of the habeas court granting the petition for a writ of

---

[1] The affirmative defense of mental disease or defect is set forth in General Statutes § 53a-13, which provides in relevant part: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law. . . ."

habeas corpus. We conclude, with respect to the plea canvass, that the habeas court improperly declared and applied a new constitutional rule in contravention of the principle enunciated in *Teague*. In the exercise of our supervisory authority over the administration of justice, however, we conclude that, in future cases when a defendant pleads not guilty by reason of mental disease or defect and the state substantially agrees with the defendant's claim of mental disease or defect, with the result that the trial essentially is not an adversarial proceeding, the trial court must canvass the defendant to ensure that he or she fully understands the consequences of his or her plea, particularly with respect to the length of time the defendant could be confined. With respect to the second issue concerning the jury trial waiver, we conclude that the habeas court improperly determined that the petitioner had satisfied the "cause and prejudice" standard for procedural default announced in *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), and therefore improperly reached the merits of the petitioner's claim that his waiver was not knowing and voluntary. Accordingly, we reverse the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of this appeal. In April, 1988, the petitioner, Adam Duperry, was arrested and charged with arson in the first degree in violation of General Statutes § 53a-111[2] and manufacture of bombs in viola-

---

[2] General Statutes § 53a-111 provides: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury.

"(b) Arson in the first degree is a class A felony."

tion of General Statutes § 53-80a[3] in connection with the explosion of a pipe bomb at the Institute of Living in Hartford. Dennis O'Toole, an assistant public defender, was appointed to represent the petitioner. O'Toole engaged in plea negotiations with Kevin McMahon, then the assistant state's attorney assigned to the case, who offered to recommend a sentence of thirty-five years incarceration suspended after twelve years in exchange for a guilty plea.

In light of the petitioner's background of mental illness and the nature of the crime charged, O'Toole had the petitioner examined by Walter A. Borden, a psychiatrist, to evaluate the petitioner's mental health and, thus, determine whether a defense of mental disease or defect was viable. After examining the petitioner, Borden concluded that at the time of the alleged offense, the petitioner had suffered from severe mental illness, which significantly impaired his ability to appreciate the wrongfulness of his actions and to conform his conduct to the requirements of the law. O'Toole shared the results of Borden's evaluation with McMahon, who requested that the petitioner be examined by another psychiatrist, Donald R. Grayson. Following his examination of the petitioner, Grayson ultimately also concluded that at the time of the alleged offense the petitioner was suffering from severe mental illness and lacked the capacity to appreciate the wrongfulness of his actions and to conform his conduct to the law. In light of these evaluations, McMahon agreed to not oppose a plea of not guilty by reason of mental disease or defect, and O'Toole agreed to waive a jury trial and to not contest the state's prima facie case regarding the underlying charges.

[3] General Statutes § 53-80a provides: "Any person, other than one engaged in the manufacture of firearms or explosives or incendiary devices for lawful purposes, who fabricates, in any manner, any type of an explosive, incendiary or other device designed to be dropped, hurled, or set in place to be exploded by a timing device, shall be guilty of a class B felony."

On December 20, 1988, the petitioner pleaded not guilty by reason of mental disease or defect and opted for a court trial, which began immediately. In accordance with their prior discussions, the parties presented their respective cases without opposition. First, the parties presented evidence with respect to the petitioner's mental state, and, second, the state introduced evidence regarding the underlying charges. The entire proceeding was completed in less than two hours, and the trial court immediately rendered its judgment, finding the petitioner not guilty by reason of mental disease or defect. Following the petitioner's acquittal, the trial court ordered, pursuant to General Statutes § 17a-582,[4]

[4] General Statutes § 17a-582 (formerly § 17-257c) provides in relevant part: "(a) When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the Commissioner of Mental Health and Addiction Services who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section, in any of the state hospitals for psychiatric disabilities . . . for an examination to determine his mental condition.

"(b) Within forty-five days of the order of commitment pursuant to subsection (a) of this section, the superintendent of such hospital . . . shall cause the acquittee to be examined and file a report of the examination with the court . . . setting forth the superintendent's . . . findings and conclusions as to whether the acquittee is a person who should be discharged. . . .

"(d) The court shall commence a hearing . . . within twenty-five days of the filing of such initial examination report.

"(e) At the hearing, the court shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, make one of the following orders:

"(1) If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the [psychiatric security review] board and . . . confined in a hospital for psychiatric disabilities . . . for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense, and (B) if there is reason to believe that the acquittee is a person who should be conditionally released, the court shall include in the order a recommendation to the board that the acquittee be considered for conditional release pursuant to subdivision (2) of section 17a-584; or

that the petitioner be committed to the custody of the psychiatric security review board (board) to be confined in a hospital for psychiatric disabilities for a maximum term of twenty-five years.

In 1995, the petitioner filed a petition for a writ of habeas corpus attacking his continued detention in the custody of the board. The petitioner alleged that his confinement was illegal because, first, he was no longer mentally ill, and, second, he had been denied the effective assistance of counsel when he elected to pursue the defense of not guilty by reason of mental disease or defect. The habeas court, *Hodgson, J.*, found no merit in either claim and dismissed the petition. In 1998, the petitioner filed a motion to open the judgment of the habeas court to present additional claims. The motion was granted and the petitioner amended his petition to allege, inter alia, that: (1) his plea of not guilty by reason of mental disease or defect violated his due process rights under both the federal and state constitutions because he was not made aware of and did not fully understand the consequences of his plea; and (2) his waiver of his right to a jury trial was not knowing and voluntary.

After an evidentiary hearing, the habeas court, *Spallone, J.*, concluded that the petitioner had proven his allegations by a fair preponderance of the evidence. The court concluded, first, that "[t]he requirements gov-

"(2) If the court finds that the acquittee is a person who should be discharged, the court shall order the acquittee discharged from custody. . . .

"(h) During any term of commitment to the board, the acquittee shall remain under the jurisdiction of the board until discharged by the court pursuant to section 17a-593. Except as provided in subsection (c) of said section, the acquittee shall be immediately discharged at the expiration of the maximum term of commitment. . . ."

Section 17a-582 was formerly codified at General Statutes § 17-257c until 1991, at which time the provision was transferred. Since that time, minor technical changes have been made that are not relevant to this appeal. For purposes of clarity, we refer to the current revision of the statute.

erning the taking of a guilty plea also apply to the acceptance of a plea [of] not guilty by reason of mental disease or defect . . . ." Noting that the record was void of any indication that the trial court had canvassed the petitioner in a manner analogous to the requirements of Practice Book § 39-19,[5] which prescribes the required canvass of a defendant who pleads guilty, the habeas court concluded that the petitioner had not, at the time of his plea, understood the consequences of pleading not guilty by reason of mental disease or defect, thereby rendering his plea involuntary. The habeas court further concluded that the petitioner did not waive his right to a jury trial knowingly and voluntarily because the record was devoid of any evidence demonstrating that the trial court had conducted the required canvass of the petitioner to ensure that he knowingly and voluntarily had waived that right. Accordingly, the habeas court rendered judgment granting the petition. The state's subsequent request for certification to appeal pursuant to General Statutes § 52-470 (b) and Practice Book § 80-1 was granted by the habeas court. The state appealed from the judgment of the habeas court to the Appellate Court, and we

---

[5] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea [of guilty or nolo contendere] without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In this appeal, the state challenges both grounds on which the habeas court granted the habeas petition. The state first claims that the habeas court improperly concluded that the trial court was required to canvass the petitioner to ensure that his plea of not guilty by reason of mental disease or defect had been made knowingly and voluntarily, and, even if the habeas court properly concluded that such a canvass is required, that conclusion established a new constitutional rule of criminal procedure in a collateral proceeding in contravention of the principle announced in *Teague* v. *Lane*, supra, 489 U.S. 288. The state also claims that the habeas court improperly determined that the petitioner's claim with respect to whether he knowingly and voluntarily had waived his right to a jury trial was not procedurally barred by the petitioner's failure to raise the claim prior to the habeas proceeding. We reverse the judgment of the habeas court.

I

The state first claims that the habeas court improperly concluded that the trial court was required to canvass the petitioner to ensure that his plea was made knowingly and voluntarily. Specifically, the state argues that a criminal defendant, such as the petitioner here, who pleads not guilty and asserts the affirmative defense of mental disease or defect, forfeits none of the rights waived by a defendant who pleads guilty and therefore does not have the same due process right enunciated in *Boykin* v. *Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), to be canvassed regarding that plea.[6] The habeas court, the state argues, there-

---

[6] In *Boykin* v. *Alabama*, supra, 395 U.S. 242–44, the United States Supreme Court held that because a defendant who pleads guilty necessarily waives three important constitutional rights, namely, the right against self-incrimination, the right to confront one's accusers, and the right to a jury trial, the

fore improperly concluded that the trial court was required to canvass the petitioner to ensure that his plea was knowing and voluntary. In the alternative, the state contends that, even if the habeas court properly concluded that the trial court was required to ensure that the petitioner's plea was knowing and voluntary, no case decided prior to the petitioner's 1988 trial had reached that conclusion. The state claims that the habeas court therefore established a new constitutional rule in a collateral proceeding in contravention of the principle announced in *Teague* v. *Lane*, supra, 489 U.S. 288. Because the state's alternate argument is dispositive of this issue, we do not reach the merits of the first claim.

We begin by setting forth the applicable standard of review of habeas corpus proceedings. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991). Historical facts constitute a recital of external events and the credibility of their narrators." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152, 662 A.2d 718 (1995). Questions of law and mixed questions of law and fact receive plenary review. Id., 152–53. The issue of whether the habeas court established a new constitutional principle in contravention of *Teague* is a question of law. Accordingly, our review is plenary. Id.

In *Teague*, the United States Supreme Court held that, in general, new constitutional rules should not be declared or applied in collateral proceedings, such as habeas corpus review. *Teague* v. *Lane*, supra, 489 U.S. 315–16; *Johnson* v. *Warden*, 218 Conn. 791, 797, 591 A.2d 407 (1991). A constitutional rule is considered "new" for purposes of *Teague* analysis if it "breaks new

due process clause of the fourteenth amendment requires that a guilty plea be knowing and voluntary.

ground, imposes a new obligation on the States or the Federal Government, or was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original; internal quotation marks omitted.) *Saffle* v. *Parks*, 494 U.S. 484, 488, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990). In other words, a rule is new unless the precedent existing at the time of the petitioner's trial compelled the result the petitioner now seeks. Id., 491.

In *Teague* v. *Lane*, supra, 489 U.S. 311, the Supreme Court did recognize two narrow exceptions to this general prohibition against declaring new constitutional rules in collateral proceedings. As summarized by the Supreme Court in *Saffle*, the first exception is permitted when the newly recognized constitutional principle either places a category of private conduct beyond the power of the state to proscribe or prohibits a certain category of punishment for an entire class of defendants because of their status or offense. *Saffle* v. *Parks*, supra, 494 U.S. 494–95. The second exception, the "watershed" exception, "is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." (Internal quotation marks omitted.) Id., 495. If the newly recognized rule falls within one of these two exceptions, it should be applied retroactively to the petitioner in the particular case and all others similarly situated. *Teague* v. *Lane*, supra, 315–16.

The first step in our analysis is to determine whether adopting the holding of the habeas court in the present case would constitute a departure from established constitutional jurisprudence. The petitioner argues that the habeas court did not establish a new constitutional principle for purposes of *Teague* and its progeny when it held that the trial court was required to canvass the petitioner in a manner analogous to Practice Book § 39-19 to ensure that his plea was made knowingly and

voluntarily. Rather, the petitioner contends, the habeas court merely applied the well established principle of *Boykin* v. *Alabama*, supra, 395 U.S. 238, to the facts of this case in light of established precedent, primarily *Miller* v. *Angliker*, 848 F.2d 1312 (2d Cir.), cert. denied, 488 U.S. 890, 102 L. Ed. 2d 214, 109 S. Ct. 224 (1988), and *United States* v. *Brown*, 428 F.2d 1100 (D.C. Cir. 1970). We are not persuaded.

In *Boykin* v. *Alabama*, supra, 395 U.S. 242–44, the United States Supreme Court held that, because a plea of guilty effectively functions as a waiver of important constitutional rights, it must be made knowingly and voluntarily. See *McCarthy* v. *United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969). The court in *Boykin* stated: "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth [Amendment]. . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers." (Citations omitted.) *Boykin* v. *Alabama*, supra, 243. "For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege. *Johnson* v. *Zerbst*, 304 U.S. 458, 464 [58 S. Ct. 1019, 82 L. Ed. 1461] (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." (Internal quotation marks omitted.) *McCarthy* v. *United States*, supra, 466. An essential part of understanding the law as it applies to the facts is knowing the maximum amount of time that the defendant could spend in confinement. *State* v. *Collins*, 207

Conn. 590, 598, 542 A.2d 1131 (1988); *State* v. *Collins,*
176 Conn. 7, 9–10, 404 A.2d 871 (1978).

The application of this principle to a plea of not guilty
by reason of mental disease or defect is not as well
established. The petitioner cites to *Miller* v. *Angliker,*
supra, 848 F.2d 1313–15, and *United States* v. *Brown,*
supra, 428 F.2d 1102, as having established the applica-
bility of the *Boykin* principle to such a plea. In *Miller,*
the petitioner was charged in connection with the mur-
ders of five Connecticut women. *Miller* v. *Angliker,*
supra, 1313–15. The petitioner pleaded not guilty and
asserted the affirmative defense of mental disease or
defect. The petitioner's trial was a perfunctory proceed-
ing in which both parties presented their respective
cases without opposition and subsequently urged the
trial court to accept the petitioner's defense. The trial
court found the petitioner not guilty by reason of mental
disease or defect. Id., 1317. Following his acquittal, the
petitioner was committed to the custody of the board
and confined in a psychiatric facility. Id. The petitioner
subsequently filed a petition for habeas corpus in the
federal District Court, attacking his detention in the
custody of the board, claiming, inter alia, that the state
had withheld exculpatory information in violation of
*Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10
L. Ed. 2d 215 (1963). The petition was denied, and the
petitioner appealed to the United States Court of
Appeals for the Second Circuit. *Miller* v. *Angliker,*
supra, 1318.

The threshold question on appeal was whether the
principle of *Brady* applied to the petitioner's case. The
court first noted that, although it was well established
that due process requires the state to disclose all mate-
rial exculpatory information in its possession, "[t]he
applicability of this principle to proceedings in which
the defendant has pleaded not guilty by reason of insan-
ity . . . is far from well established." Id., 1319. The

court began its analysis of this question by stating: "A plea of not guilty by reason of insanity resembles the plea of guilty in several significant respects, as it waives important trial rights belonging to the defendant, including his right to argue that he did not perform the acts with which he is charged, his right to urge through cross-examination of the State's witnesses that his confessions were not voluntary, and his right to introduce any other evidence tending to create a doubt that he actually performed the acts charged." Id. Relying on "the practical similarities between guilty pleas and pleas of not guilty by reason of insanity," the court held that due process requires the state to disclose all material exculpatory information regardless of whether the individual alleging a violation of *Brady* had pleaded guilty or had pleaded not guilty with the affirmative defense of mental disease or defect. Id., 1320. Since the state had withheld material exculpatory information from the petitioner in violation of *Brady*, the court concluded that the petitioner's plea was not entered knowingly and voluntarily and was therefore invalid.

In *United States* v. *Brown*, supra, 428 F.2d 1101, the defendant was charged with forgery, uttering and interstate transportation of forged securities. The defendant formally stipulated to the facts charged in the indictment but pleaded not guilty and raised a mental health defense. The defendant was convicted and sentenced to an effective term of ten years imprisonment. On appeal, the defendant claimed that the trial court improperly had failed to canvass him under rule 11 of the Federal Rules of Criminal Procedure to ensure that his stipulation was made voluntarily and with an understanding of its consequences. Id., 1101–1102. The United States Circuit Court of Appeals for the District of Columbia held that, although rule 11 was inapplicable as it applies only when a defendant pleads guilty, the trial court should have canvassed the defendant under

the procedures of rule 11 to ensure that his stipulation was made knowingly and voluntarily. Id., 1102. The court noted that "[m]ost, if not all, of the constitutional rights [r]ule 11 seeks to protect were waived by the stipulation . . . ." Id., 1103. The waiver of such important rights, the court held, requires "a searching judicial inquiry" to determine whether the stipulation was made voluntarily and with a complete understanding of its consequences. Id., 1103–1104. Since the trial court had failed to conduct such a canvass, the court held, the stipulation was invalid. Id., 1102.

Neither *Miller* nor *Brown* compel the result the petitioner in the present case now seeks. Although the courts in both cases recognized the similarities between a guilty plea and a plea of not guilty by reason of mental disease or defect, neither case established the principle that the trial court *must*, as a constitutional requirement, canvass a defendant who enters the latter plea to ensure that the plea is made knowingly and voluntarily. Rather, in *Miller*, the Second Circuit Court of Appeals held that the principle of *Brady* v. *Maryland*, supra, 373 U.S. 83, namely, that the state must disclose exculpatory information in its possession, protects not only a defendant who pleads guilty but also a defendant who pleads not guilty by reason of mental disease or defect. *Miller* v. *Angliker*, supra, 848 F.2d 1320. The petitioner in *Miller* never claimed that, and the court never addressed whether, the petitioner had a due process right to be canvassed by the trial court as though he had pleaded guilty. Similarly, in *Brown*, the District of Columbia Circuit Court of Appeals held that rule 11 of the Federal Rules of Criminal Procedure, which delineates the required canvass of a defendant who pleads guilty, should be extended also to require the trial court to canvass personally a defendant who stipulates to all the issues at trial except sanity. *United States* v. *Brown*, supra, 428 F.2d 1102. Although the holding in *Brown*

is more closely related to the question presented by the petitioner's claim in this case, in that it relates to the canvass of a defendant who waives fundamental rights at trial, the court in *Brown* did not expressly rest its holding on a constitutional footing. Rather, the court extended the reach of a federal procedural rule pursuant to what appears to have been an exercise of its supervisory authority. Id., 1103–1104. Notwithstanding the petitioner's reliance on *Miller* and *Brown* as support for his contention that the habeas court did not establish a new constitutional principle, neither case actually held that the principle of *Boykin*—that a guilty plea must be knowing and voluntary—applies to a plea of not guilty by reason of mental disease or defect. It cannot reasonably be argued, therefore, that the trial court in this case "would have felt compelled . . . to conclude that the rule [the petitioner] seeks was required by the Constitution." *Saffle* v. *Parks*, supra, 494 U.S. 488. Accordingly, we conclude that the habeas court established a new constitutional rule of criminal procedure.

Having concluded that the habeas court's ruling constituted a departure from prior constitutional jurisprudence, we now turn to the question of whether the new rule falls within either of the exceptions to the general prohibition against establishing new constitutional rules in collateral proceedings as set forth in *Teague* v. *Lane*, supra, 489 U.S. 311. As discussed previously herein, a new rule may fall within the first exception if it either places a category of private conduct beyond the power of the state to proscribe or prohibits a certain category of punishment for an entire class of defendants because of their status or offense. *Saffle* v. *Parks*, supra, 494 U.S. 494. The petitioner makes no claim that the first exception applies to the habeas court's ruling. The second exception is for watershed constitutional rules of criminal procedure. Id. The petitioner claims that

the rule announced by the habeas court in the present case constitutes a watershed rule of criminal procedure and therefore falls within the second exception of *Teague*. The petitioner contends in his brief to this court that the habeas court's conclusion—that a plea of not guilty by reason of mental disease or defect must be knowing and voluntary—meets the criteria of the watershed exception because it ensures fundamental fairness to an entire class of defendants "who otherwise have no protection to ensure that their plea and defense are entered knowingly and voluntarily."

The second exception to the general prohibition in *Teague* against recognizing new constitutional principles in collateral proceedings is reserved for those watershed rules of criminal procedure that implicate both "the fundamental fairness and accuracy of the criminal proceeding." *Saffle* v. *Parks*, supra, 494 U.S. 495. Although the contours of this exception have not been defined precisely, the United States Supreme Court stated in *Teague* that to fall within this second exception a new rule not only has to implicate the fundamental fairness of the underlying proceeding but also has to constitute a procedure "without which the likelihood of an accurate conviction is seriously diminished." *Teague* v. *Lane*, supra, 489 U.S. 313. The court stated further: "Because we operate from the premise that such [a procedure] would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." Id.; *Graham* v. *Collins*, 506 U.S. 461, 478, 113 S. Ct. 892, 122 L. Ed. 2d 260 (1993). The Supreme Court has often cited *Gideon* v. *Wainwright*, 372 U.S. 335, 344–45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), which established a criminal defendant's right to be represented by counsel, as an example of the type of rule that would fall within the exception. *Saffle* v. *Parks*, supra, 495.

The petitioner makes no argument that the rule established by the habeas court touches upon the accuracy of the underlying criminal proceeding. Although requiring that a plea of not guilty with the affirmative defense of mental disease or defect be made knowingly and voluntarily might very well implicate concerns of fundamental fairness, it is difficult to see how such a requirement would help ensure "an accurate determination of innocence or guilt . . . ." *Teague* v. *Lane*, supra, 489 U.S. 313. The right to counsel recognized in *Gideon* not only helps to ensure the fundamental fairness of a criminal proceeding but also helps to protect the defendant from an inaccurate determination of guilt. The right to a jury instruction that accurately defines the reasonable doubt standard, which was recognized by the Second Circuit Court of Appeals in *Gaines* v. *Kelly*, 202 F.3d 598, 604 (2d Cir. 2000), upon which the petitioner relies, also bears on the accuracy of the determination of guilt. The rule established by the habeas court in the present case, however, which the petitioner urges us to adopt, does not implicate the accuracy of the underlying criminal proceeding. Accordingly, the rule does not constitute a watershed rule of criminal procedure falling within the second exception of *Teague*. We conclude, therefore, that the habeas court established a new constitutional rule in a collateral proceeding in contravention of the principles of *Teague*.[7]

This conclusion, however, does not end our inquiry. We deem it appropriate, in light of concerns of fundamental fairness, to consider the substance of this issue pursuant to our supervisory authority for the purpose

---

[7] In light of our conclusion, we do not address whether the substance of the habeas court's holding was proper, i.e., whether the principle of *Boykin* v. *Alabama*, supra, 395 U.S. 242–44, that due process requires a plea of guilty to be knowing and voluntary, applies equally to a plea of not guilty by reason of mental disease or defect.

of providing guidance to trial courts in future cases. "As an appellate court, we possess an inherent supervisory authority over the administration of justice. . . . The standards that we set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . *McNabb* v. *United States*, 318 U.S. 332, 340, 63 S. Ct. 608, 87 L. Ed. 819 (1942). Rather, the standards are flexible and are to be determined in the interests of justice. *State* v. *Ross*, [208 Conn. 156, 159, 543 A.2d 284 (1988)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 230 Conn. 385, 397–98, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996). We previously have exercised our supervisory powers "to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 528, 668 A.2d 1288 (1995).

It is well established that a defendant who pleads guilty waives important constitutional rights, namely the right against self-incrimination, the right to confront one's accusers, and the right to a jury trial. *Boykin* v. *Alabama*, supra, 395 U.S. 243. It is equally well established that a guilty plea and its inherent waiver of rights violates due process unless it is knowing and voluntary. Id.; *McCarthy* v. *United States*, supra, 394 U.S. 466. Although a guilty plea and a plea of not guilty by reason of mental disease or defect are not synonymous, the practical similarities between the two are significant. See *Miller* v. *Angliker*, supra, 848 F.2d 1312; *United States* v. *Brown*, supra, 428 F.2d 1100. As the Second Circuit Court of Appeals noted in *Miller*: "A plea of not guilty by reason of insanity resembles the plea of guilty in several significant respects, as it waives important

trial rights belonging to the defendant, including his right to argue that he did not perform the acts with which he is charged, his right to [cross-examine] . . . the State's witnesses . . . and his right to introduce any other evidence tending to create a doubt that he actually performed the acts charged." *Miller* v. *Angliker*, supra, 1319.

We find little merit in the state's formalistic argument that a defendant who pleads not guilty and asserts a mental health defense waives no constitutional rights. Although such a defendant is not required to forgo the constitutional rights discussed previously, as a practical matter he or she frequently does just that, often by informal agreement with the state. As the Second Circuit Court of Appeals concluded: "[U]nder Connecticut law, the plea of not guilty by reason of insanity differs from a plea of guilty in that the State still has an obligation to present a prima facie case sufficient to convince the triers of fact beyond a reasonable doubt that the defendant performed the acts alleged. . . . Nonetheless, it is plain that the insanity plea is more like a plea of guilty than it is like a plea of not guilty since, while not relieving the State of all burden to prove that the defendant performed the acts charged, the insanity plea lessens that burden considerably as a practical matter by barring the defendant from contesting or impeaching the State's proof and from presenting other evidence that could counter that proof." Id., 1319–20. We find this reasoning persuasive.

Moreover, we find little significance in the fact that a defendant pursuing a mental health defense often does not stipulate *formally* to the acts alleged by the state, unlike the situation in *United States* v. *Brown*, supra, 428 F.2d 1101, wherein the defendant formally stipulated that he had committed all of the acts charged by the state. Although a defendant who pleads not guilty and asserts a defense of mental health is not required

formally to stipulate to the facts supporting the underlying charges, the defendant often agrees not to contest the state's case, which for all practical purposes functions as a stipulation.

Accordingly, we conclude, in the exercise of our supervisory authority over the administration of justice, that in all future cases in which a defendant pleads not guilty by reason of mental disease or defect, and the state substantially agrees with the defendant's claim of mental disease or defect, with the result that the trial essentially is not an adversarial proceeding, the trial court must canvass the defendant to ensure that his plea is made voluntarily and with a full understanding of its consequences. The scope of the canvass should be similar to that of the canvass prescribed by Practice Book § 39-19 for a defendant who pleads guilty. Specifically, the canvass must, at a minimum, establish that the defendant enters his plea with the knowledge that: (1) he is waiving his right to a jury trial; (2) he is waiving his right not to incriminate himself; (3) he is waiving his right to confront the witnesses against him; (4) he is exposing himself to the possibility of commitment to the jurisdiction of the board and of confinement in a hospital for psychiatric disabilities; (5) he must remain committed during any term of commitment imposed by the trial court unless the court finds that the defendant is a person who should no longer be committed and orders his discharge; (6) the maximum term of commitment ordered by the court can be equal to the maximum sentence that could have been imposed if the defendant were convicted of the offense, with a statement of that actual sentence; and (7) any term of commitment imposed by the trial court may be extended, potentially for an indefinite duration, as a result of a civil commitment proceeding pursuant to General Statutes § 17a-593.[8]

---

[8] See General Statutes § 17a-593 provides in relevant part: "(c) If reasonable cause exists to believe that the acquittee remains a person with psychiat-

## II

The state next claims that the habeas court improperly found that the petitioner had not waived his right to a jury trial knowingly and voluntarily. Specifically, the state first argues that the petitioner's claim regarding his jury trial waiver procedurally was barred by his failure to raise the claim prior to the habeas proceeding, and the habeas court improperly concluded that the petitioner had met the cause and prejudice standard for procedural default announced in *Wainwright* v. *Sykes*, supra, 433 U.S. 72.[9] In the alternative, the state argues,

ric disabilities or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee.

"(d) The court shall forward any application for discharge received from the acquittee and any petition for continued commitment of the acquittee to the board. The board shall, within ninety days of its receipt of the application or petition, file a report with the court, and send a copy thereof to the state's attorney and counsel for the acquittee, setting forth its findings and conclusions as to whether the acquittee is a person who should be discharged. The board may hold a hearing or take other action appropriate to assist it in preparing its report. . . .

"(f) After receipt of the board's report and any separate examination reports, the court shall promptly commence a hearing on the recommendation or application for discharge or petition for continued commitment. At the hearing, the acquittee shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged.

"(g) The court shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, make one of the following orders: (1) If the court finds that the acquittee is not a person who should be discharged, the court shall order the recommendation or application for discharge be dismissed; or (2) if the court finds that the acquittee is a person who should be discharged, the court shall order the acquittee discharged from custody. The court shall send a copy of such finding and order to the board."

[9] The habeas court did not address the issue of procedural default in its memorandum of decision dated August 1, 2000. It was only in response to a motion by the petitioner that the habeas court issued a one sentence clarification, which provided: "The court in its memorandum of decision implicitly and here finds the petitioner's claims are not barred by procedural default."

even if the habeas court correctly concluded that the petitioner had demonstrated both cause and prejudice under *Wainwright*, there is no evidence in the record to support the habeas court's finding that the trial court had failed to canvass the petitioner regarding his jury trial waiver.

The petitioner responds by arguing that his claim is not barred by procedural default, as he demonstrated both good cause for his failure to raise this claim prior to the habeas proceeding and prejudice resulting from the alleged constitutional violation. Specifically, the petitioner contends that he could not have known at the time of his trial that he had a right to object to the trial court's failure to canvass him regarding his plea because it was not until 1997 that a state court held that a defendant has a right to challenge a finding of not guilty by reason of mental disease or defect. See *State* v. *Connelly*, 46 Conn. App. 486, 495, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998). The petitioner contends that this prior uncertainty in the law explains why he did not raise the claim prior to the habeas proceeding, and is sufficient to establish cause. The petitioner claims that he was prejudiced by the fact that he could be confined indefinitely based on the trial court's finding of not guilty by reason of mental disease or defect, whereas he would have served only twelve years imprisonment if he had pleaded guilty to the state's charges. We agree with the state.

In *Wainwright* v. *Sykes*, supra, 433 U.S. 87, 90–91, the Supreme Court held that a petitioner who raises a constitutional claim for the first time in a habeas proceeding must show: (1) cause for the procedural default, i.e., for the failure to raise the claim previously; and (2) prejudice resulting from the alleged constitutional violation. In the absence of such a showing, a

court will not reach the merits of the claim. We adopted this standard for state habeas proceedings in *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991).

The petitioner's argument confuses the issue of whether his *plea* claim procedurally was barred with the issue of whether his *jury trial waiver* claim procedurally was barred. Although the petitioner's reasoning plausibly may have some merit with respect to whether his *plea* claim could meet the cause and prejudice standard; see *Reed* v. *Ross*, 468 U.S. 1, 14–15, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984); that same reasoning is not applicable to the question of whether his *jury trial waiver* claim met that standard. The state's claim is that the petitioner never objected to the alleged failure of the trial court to canvass him regarding his right to a jury trial, and therefore he is barred from making that challenge in the habeas proceeding. The petitioner's argument regarding the uncertainty of his right to challenge a finding of not guilty by reason of mental disease or defect, therefore, is not applicable to the issue of whether he had procedurally defaulted on his jury trial waiver claim, nor would the argument have been persuasive had it been applicable—the right to a jury trial was well established at the time of the petitioner's trial.

Our review of the record does not reveal any evidence upon which the habeas court could have based its conclusion that the petitioner's jury trial waiver claim was not procedurally barred by his failure to raise the claim prior to the habeas proceeding. The only evidence introduced on the matter was the testimony of O'Toole, the petitioner's attorney in 1988, who stated that he never objected to the alleged failure of the trial court to canvass the petitioner regarding his election for a court,

rather than a jury, trial.[10] The habeas court's conclusion that the petitioner's claim was not barred by procedural default was therefore improper. Accordingly, the habeas court should not have reached the merits of the petitioner's jury trial waiver claim.

## III

Finally, the petitioner argues, as an alternate basis for affirmance, that he was denied the effective assistance of counsel when he elected to plead not guilty by reason of mental disease or defect. Specifically, the petitioner contends that his attorney was constitutionally ineffective because he had failed to fully inform the petitioner of the legal and custodial consequences of such a plea, namely, the possibility that the petitioner's confinement could be extended beyond the maximum term of twenty-five years that was imposed by the trial court.[11] We disagree.

The following additional facts and procedural history are necessary for our resolution of the petitioner's claim. Following his arrest, the petitioner met with O'Toole on several occasions. During the course of these meetings, O'Toole informed the petitioner that,

---

[10] The transcript from the petitioner's second habeas hearing reveals the following colloquy on this matter:

"[George S. Ferko, Assistant State's Attorney]: Okay. Now, did you at any time ever object to the waiver of the jury trial?

"[O'Toole]: No. No.

"[Ferko]: Either before Judge Arena or with Judge Corrigan you never placed on the record any indication that you would like the client canvassed or it wasn't being done or he hadn't waived it properly?

"[O'Toole]: Correct. That's correct."

[11] The petitioner raised this claim in his original habeas petition. The habeas court, *Hodgson, J.*, concluded that the claim was without merit and dismissed the petition. As set forth earlier in this opinion, in 1998, the judgment of the habeas court was reopened to allow the petitioner to present additional claims. The second habeas court, *Spallone, J.*, granted the amended petition on the basis of the newly added claims and, therefore, did not reach the ineffective assistance of counsel claim. Thus, the findings of fact made in connection with this claim were made by the first habeas court.

essentially, he had three options. First, O'Toole informed the petitioner that he could plead not guilty and proceed to trial. O'Toole expressed to the petitioner his belief that this option posed a high risk of conviction in light of the fact that the petitioner had confessed to the crime. Second, O'Toole told the petitioner that he could plead guilty to the charges and proceed directly to sentencing. Under this option, O'Toole explained, the petitioner would likely face twelve years of imprisonment based upon the state's representation during the plea negotiations that it would recommend a sentence of thirty-five years imprisonment suspended after twelve years in exchange for a guilty plea. Finally, O'Toole informed the petitioner that he could plead not guilty and assert the affirmative defense of mental disease or defect. Pursuant to this last option, O'Toole explained, the petitioner could be confined in a psychiatric facility for a period of up to twenty-five years. O'Toole explained to the petitioner that he would be eligible for release under this option sooner than if he were to plead guilty, and therefore, he *might* spend less time in confinement. O'Toole did not inform the petitioner that any confinement imposed by the trial court under this option could be extended beyond the maximum term of twenty-five years. After explaining to the petitioner the manner in which his trial would proceed if he pleaded not guilty by reason of mental disease or defect, O'Toole ultimately recommended that option.

In 1995, the petitioner filed his original petition for a writ of habeas corpus, alleging, inter alia, that he had been denied the effective assistance of counsel when he elected to plead not guilty by reason of mental disease or defect. The habeas court, *Hodgson, J.*, rejected the petitioner's claim, finding that O'Toole had given the petitioner all the information available to him concerning the petitioner's plea options. The habeas court

further found that O'Toole had not predicted when the petitioner would be released and that "the petitioner's expectation that [the plea of not guilty by reason of mental disease or defect] would produce a quicker release was his own calculation, not based on any advice of counsel." The habeas court therefore concluded that the petitioner had not demonstrated that his counsel "failed to perform in accordance with the standard applicable to attorneys representing criminal defendants."

We begin our analysis with the appropriate standard of review. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 152. The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. Id., 152–53.

A criminal defendant has a sixth amendment right to the effective assistance of counsel at all critical stages of a criminal proceeding, including when deciding whether to accept a plea agreement or to pursue some other route. *United States* v. *Gordon*, 156 F.3d 376, 379–80 (2d Cir. 1998); *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 153. In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court adopted a two part analysis for claims of ineffective assistance of counsel. Under *Strickland*, the petitioner must show that: (1) defense counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for defense counsel's deficient representation, the result of the proceeding would have been different. Id., 687–88, 694; *Copas* v. *Commissioner of Correction*, supra, 154–55.

In the present case, the habeas court found that O'Toole had provided the petitioner with all the information available to him regarding the petitioner's plea options. The habeas court further found that the petitioner's belief that he would spend less time in confinement by pleading not guilty and pursuing a mental health defense rather than by pleading guilty was based on the petitioner's own conjecture and not on the advice of his attorney. The petitioner has made no argument that the habeas court's factual determinations are clearly erroneous. We must assume, therefore, that O'Toole provided the petitioner with all the information available to him regarding the petitioner's plea options. In light of this, it cannot be argued reasonably that O'Toole's representation of the petitioner here fell below an objective standard of reasonableness. *Strickland* v. *Washington*, supra, 466 U.S. 687–88.

The judgment of the habeas court is reversed and the case is remanded to that court with direction to render judgment denying the petition.

In this opinion the other justices concurred.