79

Argued and submitted May 10, reversed and remanded August 3, 2005

In the Matter of
Amy Marie Carlin, a Minor Child.

STATE ex rel DEPARTMENT OF
HUMAN SERVICES
and Amy Marie Carlin,
*Respondents,*

*v.*

Denise Marie SUMPTER,
*Appellant.*

021022J02; A126366

116 P3d 942

Angela Sherbo argued the cause and filed the brief for appellant.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent State ex rel Department of Human Services. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent child.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

_____

* Haselton, J., vice Ceniceros, S. J.

ORTEGA, J.

**ORTEGA, J.**

Mother appeals a stipulated judgment terminating her parental rights, arguing that she did not validly waive her right to a trial. *See Brown and Shiban*, 155 Or App 238, 240-41, 963 P2d 105 (1998), *rev den*, 328 Or 594 (1999) (although generally no appeal lies from a stipulated judgment, a party may challenge the validity of her consent to such a judgment); ORS 419A.205(1)(c) (any final disposition of a petition under the juvenile code is appealable). For the reasons set forth below, we reverse and remand.

The relevant facts in this case are procedural. In October 2003, the Department of Human Services (DHS) filed a petition to terminate mother's parental rights to her daughter, who had been in substitute care for 12 months, based on numerous allegations of unfitness and neglect. An attorney and a guardian *ad litem* had previously been appointed for mother, and those appointments were continued at all the hearings at issue in this appeal.[1] The trial set for March 2004 was continued in order to allow for a psychological evaluation of mother, who then entered a mental health and drug rehabilitation program in April 2004. At a status conference in May 2004, the court commented that mother was doing well, and the parties discussed mother's ongoing treatment and efforts to obtain housing. Mother continued to do well in her treatment program and attended a supervised visit with her daughter in June.

The termination trial was rescheduled for July 1, 2004. On that date, a conference was apparently held in chambers, after which counsel for DHS indicated on the record that the parties had agreed to what she described as a "deferred termination":

> "The parties have gone over, extensively, a service agreement that I understand [mother] will sign today. * * * It details the requirements and expectations of

---

[1] The appointment of the guardian *ad litem* was made at the request of mother's attorney and on the stipulation of attorneys for DHS and the child. The record does not contain findings regarding mother's need for a guardian *ad litem* but, given our resolution of this case, we need not reach mother's arguments concerning whether the manner of that appointment was appropriate.

[mother] for the next six months to continue to work a reunification plan."

The court then asked mother's attorney if she had reviewed the document with mother. Mother's attorney replied that she had and that mother "was actually involved in the inter-lineations of all of the changes" and was "well aware of what's expected." The following exchange then took place:

"THE COURT: Okay. Is that true, [mother]? You've read that over and understand it, do you?

"THE MOTHER: Yes.

"THE COURT: Now you realize, [mother], the idea here—and really I was part of this solution, this, you know—I think of this as perhaps in part my suggestion, at least it's a suggestion I certainly concurred in. The idea is this: you're going to be given this opportunity to keep on with the progress you've shown, get yourself in good shape, in a position where you can mother this child, and so forth. Everyone is rooting for you in that respect. But you are agreeing that your rights, ultimately, would be terminated in the event this—you were unable to complete, or unwilling to complete, the plan that you have agreed to. Do you understand all that?

"THE MOTHER: Yes.

"THE COURT: And the idea behind that is that rather than go ahead with the termination case today that might very well have drastic results—and certainly would not be final in the sense that either side could appeal the result and so forth—but all the parties involved felt it was wise to allow you an opportunity to completely rehabilitate yourself and pull this thing off that you are presently in the process of achieving. And if you can do that, then, of course, ultimately the termination case would be dismissed.

"But if you do not, then there would be—we wouldn't start over again because the time periods involved here are very important. We've got to sort of 'fish or cut bait' and get to the end of this thing in some agreed way. And the idea here is that if you succeed on this thing that will be the end of the termination case. And if you don't, you will have agreed that the termination can occur without any further hearing. Do you understand all that?

"THE MOTHER: Yes.

"THE COURT: And that meets with your approval, does it?

"THE MOTHER: Yes.

"THE COURT: And is that agreeable to you, Ms. Canady [mother's attorney]?

"MS. CANADY: It is, Your Honor."

Mother's guardian *ad litem* was present but said nothing during the hearing.

The court then entered a "Stipulated Order After Hearing" setting forth the parties' agreement that, if mother complied with the terms of the attached service agreement for six months, DHS would change its permanent plan for child from adoption to reunification with mother and would dismiss the petition to terminate mother's parental rights. The order further provided that, if at any time during the six-month period the court found that mother had failed to comply with the service agreement, "a stipulated agreement terminating mother's parental rights to the child shall be entered, without further hearing on the allegations of the petition."

Among other things, the attached service agreement required mother to maintain a drug- and alcohol-free lifestyle, to keep DHS informed as to her current living situation, to participate in parent-child interaction and therapeutic visitation, and to complete her mental and substance abuse treatment program. The service agreement, which mother signed, indicated that completion of the agreement could result in DHS continuing to consider a reunification plan and that failure to complete the agreement could result in "DHS moving forward with a termination of parental rights trial." The order, with the service agreement attached, was entered on August 4, 2004.

At a further hearing on August 25, 2004, the state presented evidence that mother had stopped attending her mental health and drug treatment program and had tested positive for methamphetamine on two occasions. Based on that information, the court entered a "stipulated" judgment "voluntarily" terminating mother's parental rights to her

daughter.[2] That judgment indicated that mother and the guardian *ad litem* understood that mother had a right to trial, that petitioner would have to prove the allegations by clear and convincing evidence, and that mother had the right to call witnesses and present evidence. Neither mother nor her guardian *ad litem* spoke at that hearing.

■ On appeal, mother contends that the judgment should be set aside because neither she nor her guardian *ad litem* voluntarily, knowingly, and intelligently waived her right to a trial. She also argues that the guardian *ad litem*'s appointment did not comport with due process and that she received constitutionally inadequate assistance of counsel. We do not reach mother's second and third arguments because we agree with the first argument, as explained below.

■ Before turning to the merits, however, we address the state's preliminary argument that the judgment is not appealable "because consent is not being permissibly attacked." The gist of the state's argument is that mother's consent was given at the July hearing and that mother should have appealed the August 4 order that was issued as a result of that hearing. According to the state, the order was appealable under ORS 419A.205, mother failed to appeal it, and her appeal from the judgment terminating her parental rights is an impermissible collateral attack on the earlier order. The flaw in the state's argument is that the order entered by the court on August 4, entitled "Stipulated Order After Hearing," was not appealable under ORS 419A.205(1), which provides:

"For the purpose of being appealed, the following are judgments:

"(a) A judgment finding a child or youth to be within the jurisdiction of the court;

"(b) A judgment disposing of a petition including, but not limited to, a disposition under ORS 419B.325 or 419C.411;

---

[2] Although denominated a stipulated judgment, it was submitted by counsel for DHS and was signed only by the trial judge.

"(c)   Any final disposition of a petition; and

"(d)   A final order adversely affecting the rights or duties of a party and made in a proceeding after judgment including, but not limited to, a final order under ORS 419B.449 or 419B.476."[3]

The state argues that the August 4 "Stipulated Order After Hearing" was appealable under paragraph (1)(d) of that statute, but offers no analysis or support for that argument. Even assuming that we were to agree that the August 4 order is a "final order" as that term is used in the statute, the state does not explain how that order, which was entered after the petition to terminate mother's parental rights was filed but before mother's parental rights were terminated, is an order "made in a proceeding *after judgment.*" ORS 419A.205(1)(d) (emphasis added). We conclude that the August 4 order was one made before, rather than after, judgment because a judgment in a termination case disposes of the petition. *See generally* ORS 419B.498-419B.530 (describing termination process). Moreover, the order in question does not fit within any of the other categories of appealable judgments listed in ORS 419A.205(1). We therefore conclude that mother is entitled to challenge the intermediate August 4 order in the context of an appeal of the final judgment of termination.

■       We turn now to the substance of mother's arguments. Mother contends that neither she nor her guardian *ad litem* knowingly, voluntarily, and intelligently waived mother's right to a trial concerning the termination of her parental rights. We agree. As an initial matter, we note that, because of the appointment of a guardian *ad litem* to represent her interests, mother *alone* could not waive her right to a trial. That is, under circumstances in which a guardian *ad litem* has been appointed for a parent, it is the guardian *ad litem* who has the legal authority to waive the right to a trial. *See generally State ex rel Juv. Dept. v. Cooper*, 188 Or App 588, 598, 72 P3d 674 (2003) (the function of a guardian *ad litem* in termination cases is "to appear on behalf of, and represent the interests of, the incapacitated person").

---

[3] ORS 419B.449 concerns review proceedings in guardianship cases, and ORS 419B.476 concerns orders resulting from permanency hearings. Neither of those statutes applies to the order at issue here.

■   The issue of whether there was a valid waiver of mother's right to a trial was not preserved in the trial court. Accordingly, we may consider it only if it involves "an error of law apparent on the face of the record." ORAP 5.45(1). An error is apparent on the face of the record if the legal point is obvious and "not reasonably in dispute." *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990).

That a waiver of a right to trial must be made knowingly, voluntarily, and intelligently is not reasonably in dispute. In *State ex rel SOSCF v. Dennis*, 173 Or App 604, 615, 25 P3d 341, *rev den*, 332 Or 558 (2001), we addressed the due process requirements for waiver of the right to trial in the context of a termination case:

> "[R]elying on the Due Process Clause, father argues that the trial court erred in denying his motion to set aside the stipulated judgment because he did not knowingly, voluntarily, and intelligently waive his parental rights. [The state] responds that the record of the * * * hearing clearly demonstrates a valid waiver of father's rights. Father's stipulation to termination of his parental rights was, in effect, a waiver of the constitutional safeguards available under the Due Process Clause to a parent whose rights the state seeks to terminate. *See State ex rel Juv. Dept. v. Geist*, 310 Or 176, 186, 796 P2d 1193 (1990) (because the permanent termination of parental rights is one of the most drastic actions a state can take against one of its inhabitants, the finality of a termination proceeding must be achieved consistently with due process). We therefore review as a matter of law to determine whether father's stipulation was voluntarily, knowingly and intelligently made. *See State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992) (waiver of a constitutional right must be voluntary, knowing, and intelligent). A waiver is valid only when it reflects an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been a knowing and intelligent waiver of a constitutional right depends, in each case, on the particular circumstances surrounding that case."

In *Dennis*, we held that the waiver was constitutionally valid. There, the father's attorney told the court that he had discussed the basis of the termination petition with the father and had explained weaknesses in the state's case, but

that the father wished to stipulate to the termination because he believed it was in the child's best interests. 173 Or App at 615-16. The court then asked the father whether he understood the attorney's remarks, whether the father "freely and voluntarily" entered into the stipulation, whether the father was satisfied with his attorney's advice, and whether the father knew that he had a right to a "full-blown trial" in which the state "must prove the allegations in the petition by clear and convincing evidence * * *." *Id.* at 616-17. The father responded that he did. *Id.* The court then asked if the father knew that he had a right to testify, to call witnesses, to present evidence, and to have his attorney cross-examine the state's witnesses. The father replied that he did. Based on that record, we concluded that the father had "voluntarily, knowingly, and intelligently stipulated to termination of his parental rights." *Id.* at 618.

The state correctly points out that our decision in *Dennis* does not mean that every colloquy concerning waiver of trial rights needs to be as lengthy and explicit as the one we approved in that case. Rather, the state notes, the proper guide is *Meyrick*, on which *Dennis* is based. *Meyrick* actually concerned waiver of the right to counsel, so it is not directly applicable here. However, it does provide the necessary background for understanding our holding in *Dennis*, as discussed below.

In *Meyrick*, a criminal defendant indicated to the trial court that he wished to represent himself. 313 Or at 128. The trial court told the defendant that the implications of doing so were "pretty serious" and that there were "potential problems" with proceeding without counsel. *Id.* In evaluating the defendant's waiver, the Supreme Court began by noting that the right to counsel is a fundamental right and that a valid waiver will not be presumed from a silent record. *Id.* at 131-32. The court held that a colloquy on the record between the trial court and the defendant about the risks of self-representation was the "preferred means of assuring that the defendant understand[s] the risks of self-representation." *Id.* at 133. The court went on to note that the "more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a

defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege * * *." *Id.* The court emphasized that whether there has been an intentional relinquishment of a right "will depend on the particular circumstances of each case, including the defendant's age, education, experience, and mental capacity[.]" *Id.* at 132.

■ The state argues that mother validly waived her trial rights here because (a) mother had a guardian *ad litem* and thus was afforded an "added procedural protection," (b) the court informed mother that "termination may occur without any further hearing," and (c) the guardian *ad litem* did not object. We are not persuaded that those three factors add up to an intentional relinquishment of a known right. As noted above, it was mother's guardian *ad litem*, not mother alone, who would have needed to make a valid waiver under these circumstances. The mere fact that the guardian *ad litem* was present and did not object does not indicate that the guardian *ad litem* waived mother's right to a trial after being informed of the nature of that right. As the colloquy in *Dennis* demonstrates, the court must ascertain whether the person making the waiver understands exactly what she is giving up when waiving the right to a trial. At a bare minimum, the court must ascertain that the person understands that the party has a right to trial at which the state has the burden of demonstrating by clear and convincing evidence the allegations in the petition to terminate parental rights. *Cf. State ex rel Juv. Dept. v. Clements*, 95 Or App 640, 646, 770 P2d 937 (1989) (the child in a juvenile delinquency case did not adequately waive his right to a trial where the court failed to inform him that the state would be required at trial to establish his guilt beyond a reasonable doubt).

Here, it is not possible to infer from the above-quoted abbreviated colloquy between mother and the court during which the guardian *ad litem* was silent, or from the circumstances, that the guardian *ad litem* (a) understood that mother had a right to a trial at which the state has the burden of demonstrating by clear and convincing evidence the allegations in the petition to terminate her parental rights, and (b) wished to waive that right. First, as to her understanding of the rights being waived, we note that the court

did not discuss that information with mother or her guardian *ad litem* on the record, nor did it determine on the record that mother's attorney had discussed it with them.[4] The court did ascertain that mother's attorney had discussed the *service agreement* with mother but, as noted, the service agreement outlined DHS's expectations of mother and indicated that failure to complete the agreement could result in "DHS moving forward to a termination of parental rights *trial*." (Emphasis added.) We cannot infer from mother's signature on the service agreement or from the fact that mother's attorney went over the service agreement with her that mother's guardian *ad litem* understood that mother had a right to a trial at which the state had the burden of demonstrating by clear and convincing evidence the allegations in the petition to terminate mother's parental rights.

■      Second, we cannot infer a waiver of mother's rights from the guardian *ad litem*'s silence. Because the guardian *ad litem* steps into the shoes of the incapacitated party, we evaluate a guardian *ad litem*'s decision on waiver of the right to trial the same way we would evaluate the decision of a person acting on her own behalf. That is, we do not presume the guardian *ad litem* to have specific knowledge of the applicable law,[5] and we cannot infer from her silence that she was agreeing to anything. *See State v. Gornick*, 196 Or App 397, 407, 102 P3d 734 (2004) (a waiver of the constitutional right to a jury trial cannot be presumed from a silent record, but requires express consent). In addition, mother's attorney's assent to the stipulation is insufficient to establish the necessary waiver. *Cf. State v. Cordray*, 91 Or App 436, 438, 755 P2d 735 (1988) ("Although an attorney's statements are normally binding on a client, we decline to presume an express,

---

[4] The trial court's statement in the judgment—that mother and her guardian *ad litem* had been advised and understood that mother had a right to trial, that petitioner would have to prove the allegations by clear and convincing evidence, and that mother had the right to call witnesses and present evidence—is not supported by any evidence in the record.

[5] In this particular case, it appears that a great deal of important information may have been conveyed to mother and her guardian *ad litem* off the record in chambers. It also appears that mother's guardian *ad litem* may be very experienced in serving in that role in this type of case. Nonetheless, our decision must be based on the record, and the record here is insufficient to establish that either mother or her guardian *ad litem* was adequately informed of mother's rights.

knowing waiver of consent to be tried without a jury from defendant's failure to object to his attorney's actions."). Accordingly, the record does not support a conclusion that mother's guardian *ad litem* knowingly, intelligently, and voluntarily waived mother's right to a trial. The error is apparent on the face of the record.[6]

■■ Having found error apparent on the face of the record, the next question is whether we should exercise our discretion to correct the error. We give consideration to factors such as these:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice of the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

Weighing against correcting the error here is the undeniable conclusion that, had mother's attorney brought the error to the attention of the trial court, it most certainly could have been addressed. However, the nature of the error weighs heavily on the other side of the scale. The error is one of considerable gravity, as it involves the constitutional safeguards applicable to a parent's fundamental rights involving her child. For the same reasons that such an error is not easily susceptible to harmless error analysis, *see* 201 Or App at 90 n 6, it is difficult to speculate that the error is not one of

---

[6] We further note that this type of error is not easily susceptible to a harmless error analysis. In *State v. Cole*, 323 Or 30, 912 P2d 907 (1996), the court declined to apply a harmless error analysis in the context of a waiver of counsel where the defendant was not sufficiently apprised of the risks of representing himself at a suppression hearing as required by *Meyrick*. The court rejected the state's argument that the defendant could not have prevailed at the suppression hearing even with representation of counsel, rejecting the notion that "the right of counsel would be applicable only when the court could say that defendant probably would win with the assistance of counsel." *Id.* at 36. The court concluded that it should not speculate about the outcome of such a hearing. *Id.* The same considerations apply with equal or greater force in the present context. Here, because the waiver was of the trial itself, we have no evidentiary basis for speculating how a trial would have come out had mother, through her guardian *ad litem*, exercised her right to go to trial.

considerable gravity. That is, we are confronted with a termination of parental rights, with no evidentiary record to support the allegations made in the petition to terminate parental rights and no valid waiver of a trial in which such an evidentiary record would have been developed. Given those circumstances, we exercise our discretion to correct the asserted error.

Reversed and remanded.