******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE YASIEL R. ET AL.*
(SC 19372)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued February 11—officially released August 18, 2015*

*James P. Sexton*, assigned counsel, with whom was *Michael S. Taylor*, for the appellant (respondent).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Karen Oliver Damboise*, for the minor children.

*Christine Perra Rapillo*, director of delinquency defense and child protection, filed a brief for the Office of the Chief Public Defender as amicus curiae.

*Opinion*

EVELEIGH, J. This certified appeal raises important issues concerning the review of unpreserved claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and our supervisory authority over the administration of justice in connection with the need to canvass a parent in a termination of parental rights proceeding. The present case arises from the trial court's judgments terminating the parental rights of the respondent mother, Ashley P., to her two minor children.[1] On appeal, the Appellate Court concluded that, in order to prevail on an unpreserved claim under *Golding*, which requires that a party establish that an alleged constitutional violation "clearly exists," a party must point to binding Connecticut precedent. *In re Yasiel R.*, 151 Conn. App. 710, 721, 94 A.3d 1278 (2014). The respondent appeals, upon our grant of certification,[2] claiming that: (1) the Appellate Court improperly construed the third prong of *Golding*; (2) because her right to due process was violated, she can prevail under *Golding*; and (3) even if her right to due process was not violated, this court should nonetheless reverse the Appellate Court's judgment under our supervisory authority because the trial court failed to canvass her regarding her decision to waive her right to a trial and to not contest the allegations of the petitioner, the Commissioner of Children and Families.[3] We conclude, contrary to the Appellate Court, that the absence of existing Connecticut precedent does not preclude consideration of a claim under *Golding*, but we are not convinced that the trial court's failure to canvass the respondent constituted a denial of her right to due process under the fourteenth amendment to the United States constitution. We are, however, convinced that we are warranted in using our supervisory authority over the administration of justice to require that a trial court canvass a parent who does not consent to the termination prior to the start of a termination of parental rights trial, in order to ensure the overall fairness of the termination of parental rights process. See part III of this opinion. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts and procedural history. "The respondent's 'fourth child, Yasiel, was born to [the respondent] when she was twenty-two years old. The father . . . was fifteen years old when he impregnated [the respondent]. [The respondent] was subsequently arrested for statutory rape. [The father] moved in with [the respondent] while she was pregnant. After the child was born, [the respondent] reported that [the father] became increasingly violent. She said she did not want to remain in the relationship and wished to leave, but she became pregnant with Sky, her fifth child, in July, 2009, only four months after Yasiel was born.' The two children

were removed from the respondent's care on September 21, 2011. The respondent was thereafter provided with supervised visitation and transportation.

"Due to the respondent's various arrests and her mental health and substance abuse issues, the petitioner filed petitions to terminate [the respondent's] parental rights in November, 2012. According to the petitioner, the court, on December 11, 2012, advised the respondent of her trial rights, entered denials to the petitions on her behalf, and appointed her an attorney.[4] A contested hearing then was scheduled for November 12, 2013. At that hearing, the respondent's counsel stated that 'although [the respondent is] not in agreement with the [termination of parental rights], she cannot bring herself to consent today. That being said, she's in agreement with the court taking the case on the papers. She's in agreement to the exhibits that . . . have been entered.' Her counsel then stated that the respondent 'wants the court to be aware that things have significantly changed for her over the last two years' and continued to explain those changes.[5] At no time did the court canvass the respondent personally to question her decisions not to contest the petitioner's exhibits and to waive her right to a full trial. It stated only that 'I think I understand your position, and I will certainly consider that [you've made great progress] when I'm reviewing all the material . . . .'

"[The trial] court terminated the parental rights of the respondent [as to both Yasiel and Sky on November 13, 2013]. In so doing, the court held that the petitioner had proved, by clear and convincing evidence, that (1) the children were neglected or uncared for in a prior proceeding, (2) the respondent was provided specific steps to take to facilitate the return of the children, and (3) the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, such parent could assume a responsible position in the lives of the children. The court also held that, in considering all the statutory criteria set forth in General Statutes § 17a-112 (k), termination was in the best interests of the children." (Footnotes altered.) *In re Yasiel R.*, supra, 151 Conn. App. 712–14. On appeal to the Appellate Court, the respondent argued that the trial court violated her right to due process when it failed to canvass her about her decision to waive her right to a full trial and to not contest the exhibits presented to the court by the petitioner. Id., 712. The Appellate Court affirmed the judgments of the trial court, concluding that the respondent failed to demonstrate that the failure to canvass her was plain error and that her constitutional claim failed under the third prong of *Golding*. Id., 721–22. Specifically, with regard to review under *Golding*, the Appellate Court concluded that the respondent's claim failed because she failed to "cite to any precedent from Connecticut

for the proposition that a parent has a constitutional right to be personally canvassed at the trial stage of a termination proceeding." Id., 721. The respondent then filed a petition for certification to appeal which we granted. See footnote 2 of this opinion.

After oral argument in this court, we ordered the parties to submit supplemental briefs to answer the following questions: "If this court were to conclude that the respondent . . . cannot prevail on her claim that the due process clause of the fourteenth amendment . . . required the trial court to canvass her personally regarding her decision not to challenge the evidence introduced by the petitioner . . . and not to adduce any evidence of her own, should this court nevertheless consider whether to require the canvass under our inherent supervisory authority over the administration of justice? If so, should this court exercise its supervisory authority to require such a canvass?" The parties submitted supplemental briefs answering these questions.

I

We first consider whether the Appellate Court properly construed the third prong of *Golding* so as to require that there be directly applicable binding Connecticut precedent for a constitutional violation clearly to exist such that relief can be afforded to the respondent.

It is not disputed that the respondent did not preserve her constitutional claim before the trial court. Therefore, she seeks our review pursuant to *Golding*. In *State v. Golding*, supra, 213 Conn. 239–40, we held that an appellant "can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [respondent's] claim will fail." (Emphasis omitted; footnote omitted.) The Appellate Court held that "[i]n [the present] case, the first two prongs of *Golding* are satisfied.[6] First, the record is adequate to review the respondent's claim. Second, 'a claim concerning the termination of a respondent's parental rights is of constitutional magnitude in that [t]he right to the integrity of the family is among the most fundamental rights guaranteed by the fourteenth amendment.' " (Footnote altered.) *In re Yasiel R.*, supra, 151 Conn. App. 721. The court concluded, however, that the respondent's claim faltered on the third prong of *Golding* because she failed to show that a constitutional violation clearly existed where,

although the respondent pointed to cases from other jurisdictions in support of her due process claim, she failed to "cite to any precedent from Connecticut for the proposition that a parent has a constitutional right to be personally canvassed at the trial stage of a termination proceeding." Id.

On appeal to this court, the respondent claims that the text of the third prong of *Golding* does not support the Appellate Court's conclusion that the respondent was required to rely on "binding precedent to support [her] proposition." Id. Further, the respondent contends that the Appellate Court's conclusion represents a stark departure from this court's jurisprudence over the last twenty-five years. The petitioner, however, contends that the respondent's counsel mischaracterizes the Appellate Court's decision. The petitioner asserts that the Appellate Court did not find that the respondent had failed to satisfy the third prong of *Golding* merely because it believed binding precedent was required to do so, but rather it did so after finding no supporting precedent and properly performing the due process analysis required by *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We agree with the respondent. Although not dispositive of our analysis, we wish to clarify that the third prong of *Golding* does not require that there be existing Connecticut precedent already recognizing a constitutional right. Instead, a party satisfies the third prong of *Golding* if he or she makes a showing sufficient to establish a constitutional violation. Requiring anything more would defeat the purpose of *Golding*, which, of course, is to permit a party to prevail on an unpreserved constitutional claim when, on appeal, the party can demonstrate a harmful constitutional deprivation. Construing *Golding* in this manner, we conclude that our use of the word "clearly" in describing the requirements under that prong of the test is unnecessary and misleading. See *State* v. *Golding*, supra, 213 Conn. 239–40. Accordingly, we conclude that the third prong of *Golding* should read: "the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial." Id., 240.

Indeed, our holding regarding the third prong of *Golding* is consistent with our prior case law, in which we have previously employed *Golding* to decide constitutional questions of first impression. See, e.g., *State* v. *Montanez*, 277 Conn. 735, 751, 894 A.2d 928 (2006) (utilizing *Golding* to decide for first time that "principal's use of self-defense properly may be considered in the prosecution of his accessory"); *State* v. *Joyner*, 225 Conn. 450, 457, 625 A.2d 791 (1993) (reviewing unpreserved claim under *Golding* "because it raises an important and *unresolved* question of state constitutional law" [emphasis added]). Therefore, to the extent that the Appellate Court required that the respondent reference prior Connecticut precedent to be successful under the third prong of *Golding*, we disagree.

## II

Having determined that the Appellate Court improperly construed the third prong of *Golding*, we must next consider whether the due process clause of the fourteenth amendment to the United States constitution requires that a trial court canvass a parent about his or her decision not to contest the exhibits presented against him or her in a parental termination proceeding and to waive his or her right to present a case at trial.

The right of a parent to raise his or her children has been recognized as a basic constitutional right. *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). Accordingly, a parent has a right to due process under the fourteenth amendment to the United States constitution[7] when a state seeks to terminate the relationship between parent and child. See *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

In determining what procedural safeguards are required by the federal due process clause when the state seeks to terminate the parent-child relationship, the United States Supreme Court has utilized the balancing test set forth in *Mathews* v. *Eldridge*, supra, 424 U.S. 335. To determine whether due process requires a canvass in this context, *Mathews* directs us to consider and weigh three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Id.

We first consider the importance of the private interest that is jeopardized by the termination proceeding. The petitioner does not dispute that the respondent's interest in retaining her parental rights as to her children is constitutionally protected. Indeed, this court has recognized that "[t]he rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and [r]ights far more precious . . . than property rights." (Internal quotation marks omitted.) *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 284, 455 A.2d 1313 (1983). "Unquestionably, these important rights are severely threatened by the state's initiation of termination proceedings. Such proceedings may result not only in the modification or limitation of parental rights, but may irrevocably sever the relationship between parent and child. . . . This deprivation is unique and complete. . . . Consequently, under the first prong of the [*Mathews*] test, the private interest of a parent in a termination proceeding is considerable." (Citations omitted.) *In re Alexander V.*, 223 Conn. 557, 561, 613

A.2d 780 (1992). We agree with the respondent that the fundamental liberty interest of a parent that is placed in jeopardy by a trial to terminate that parent's parental rights, standing alone, has been sufficient to warrant heightened procedural safeguards.

The respondent contends that the second *Mathews* factor militates in her favor. She argues that the twin perils of conducting a termination trial in summary fashion and the risk of inadvertently foreclosing a parent from receiving a full trial on the merits must both be considered. There is a need, she suggests, to subject social workers, who author the social studies that courts rely on, to cross-examination. There is also a need to cross-examine expert witnesses. The respondent also points to the fact that in a summary proceeding, without the court first canvassing the parent, there is the potential that crucial rights will be inadvertently waived. These rights can only be waived, she claims, if they are made knowingly, intelligently and voluntarily. The petitioner, however, claims that the second factor of *Mathews* weighs heavily in favor of herself. The petitioner asserts that the respondent's intention to forgo testimonial evidence and the trial court's failure to canvass her regarding that decision did not erroneously deprive her of any right. In support of her position, the petitioner contends that, despite the fact that the respondent's brief is an apparent wholesale attack on her trial attorney's strategy, the respondent is not claiming that she received ineffective assistance of counsel. In addition, the petitioner asserts that it would be impracticable to canvass the respondent on every issue because the trial court would be required to ask whether the respondent agrees with every objection or every exhibit that is admitted without any objection. Finally, the petitioner claims that the respondent's due process rights were protected because she was present and represented by an attorney and she was fully able to participate in the proceedings if she had so desired.

The second factor set forth in *Mathews* requires that we examine the extent to which current procedures create a risk of an erroneous deprivation of parental rights and also that we weigh the likelihood that a canvass would reduce that risk. We begin by noting that there currently is no statute or court rule requiring a trial court in a termination proceeding to conduct a canvass prior to the initiation of the trial. However, "[t]he essence of due process is the requirement that a person in jeopardy of a serious loss [be given] notice of the case against him and [an] opportunity to meet it." (Internal quotation marks omitted.) *State* v. *Lopez*, 235 Conn. 487, 493, 668 A.2d 360 (1995). As one of our sister states has stated: "Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse

witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the [c]onstitution or statutes; and a hearing before an impartial decisionmaker." (Internal quotation marks omitted.) *In re Interest of Mainor T.*, 267 Neb. 232, 247–48, 674 N.W.2d 442 (2004).

We agree with the petitioner that the added procedural safeguard requiring that a trial court canvass a parent prior to a termination of parental rights trial does not substantially decrease any risk of erroneous deprivation of her right to family integrity. When the respondent is represented by counsel, the current procedures in place adequately protect the respondent from any claimed constitutional deficiencies. We note that the respondent was previously advised of her rights approximately one year before the start of trial and she was represented by an attorney throughout the proceedings. It has frequently been recognized, albeit in other contexts, that "we strongly presume that counsel's professional assistance was reasonable, and the [respondent] has the burden to overcome the presumption that [her] attorney was employing sound trial strategy. . . . We evaluate the conduct from trial counsel's perspective at the time. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Bova* v. *Commissioner of Correction*, 95 Conn. App. 129, 137–38, 894 A.2d 1067, cert. denied, 278 Conn. 920, 901 A.2d 43 (2006); see also footnote 5 of this opinion. On appeal, the respondent's claims relate to failures of her attorney during the trial on the termination of parental rights. A canvass of the respondent would, however, do nothing to enhance the performance of her attorney during the trial. The respondent certainly had adequate notice of the proceedings and was present with her counsel at the time of the trial. She had the opportunity to participate in a contested hearing, present evidence on her own behalf, testify on her own behalf, and object to any exhibits and cross-examine witnesses, but she declined to do so. In the present case, the respondent does not claim that she attempted to participate and was prevented from doing so by her attorney or that she asked her attorney to participate and he refused. Therefore, we conclude that the second *Mathews* factor weighs heavily in favor of the petitioner.[8]

The third factor in the *Mathews* balancing test concerns the government's interest in the proceeding and the fiscal and administrative burdens attendant to increasing procedural requirements. The respondent contends that the state has two interests that are implicated by requiring trial courts to canvass parents in termination of parental rights trials. The first is its "fiscal and administrative interest in lessening the cost involved in termination proceedings"; the second is its

parens patriae interest "in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child." *In re Alexander V.*, supra, 223 Conn. 565. The respondent claims that the fiscal and administrative costs of a short canvass would be minimal. Further, she argues, a canvass would ensure the accuracy of the termination proceeding.

The petitioner asserts that the state's primary interest in terminating parental rights is to free the child for adoption or to free the child of uncertainty. The petitioner also asserts that it has an interest in expediting cases involving abused and neglected children, and the speedy resolution of trials involving the termination of parental rights in order to protect the welfare of the affected children. The petitioner further claims that the respondent's proposed canvass would necessitate the trial court to extensively educate the parent on multiple substantive and procedural legal principles in order to ensure this " 'waiver' " of objections to exhibits was knowingly and voluntarily made. As such, the petitioner contends that the cost and delay are significant with little if any potential benefit to the respondent.

While we agree with the respondent that the cost of a short canvass would be minimal, if any, we also acknowledge that a lengthy canvass could potentially affect the accurate and speedy resolution of the termination proceeding. Therefore, in view of the fact that the respondent was represented throughout the course of this proceeding, we view the third *Mathews* factor as neutral to both sides and fully dependent on the length of a proposed canvass, which we do not perceive as being constitutionally required.

Having considered the three factors set forth in *Mathews*, we conclude that due process does not require that a trial court canvass a respondent who is represented by counsel when the respondent does not testify or present witnesses and the respondent's attorney does not object to exhibits or cross-examine witnesses. Although it is evident that the parent has an important interest to be protected, the strength of the second *Mathews* factor outweighs our conclusions regarding the first and third factors. We therefore conclude that the respondent has failed to sustain her burden of proof as to the third prong of *Golding* and we reject her claim on that basis.

### III

Having concluded that the respondent's right to due process was not violated, we next consider whether we should nonetheless exercise our supervisory authority to require a canvass prior to a termination of parental rights trial.

The respondent urges us to use our supervisory power to require a canvass in a situation, such as the present case, where there is no testimony offered by

the respondent, no objection to exhibits and no cross-examination of witnesses. The respondent claims that using our supervisory power to require a canvass in such situations is consistent with the ruling in *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 155–61, 84 A.3d 840 (2014), where this court recently articulated the circumstances under which it is appropriate for the court to exercise its supervisory authority. The respondent further claims that because the present case involves safeguards for securing a fundamental right, we should use our supervisory authority to guide the trial courts in the administration of justice.

In response, the petitioner asserts that using our supervisory authority to require a canvass would inject a trial court into the relationship between counsel and the parent by requiring courts to canvass a respondent, directly, about her counsel's trial strategy. The petitioner further contends that the very reasons that constitutional due process does not require a canvass in this situation also counsels against the adoption of a rule that would entail the same sort of intrusion. The petitioner also suggests that it would be very difficult to craft a rule applicable to all situations. Here, in particular, the petitioner argues that the record is not clear that the respondent's counsel totally abandoned the case. She points to the fact that counsel argued to the court, based upon one of the exhibits, that the respondent "has had clean drug screens over the course of the last two years." The petitioner further expresses a concern that a canvass could be required every time counsel agreed to the admission of a piece of evidence, perhaps contrary to trial counsel's strategic choice to do so. Also, the petitioner contends that such a rule is not prudent at this time since the Rules Committee of the Superior Court and other attorneys experienced in the area have not had the opportunity to voice their opinion on the matter. We disagree with these contentions and, rather, agree with the respondent that, in the interest of the fair administration of justice, it is appropriate that we exercise our supervisory authority to require that a trial court canvass the respondent parent before the start of any trial on the termination of parental rights.

It is well settled that "[a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Lockhart*, 298 Conn. 537, 576, 4 A.3d 1176 (2010); see also *State* v. *Rose*, 305 Conn. 594, 607,

46 A.3d 146 (2012).

We recognize that this court's "supervisory authority is not a form of free-floating justice, untethered to legal principle." (Internal quotation marks omitted.) *State* v. *Pouncey*, 241 Conn. 802, 813, 699 A.2d 901 (1997). Rather, the rule invoking our use of supervisory power is "one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically in that it lends itself to the adoption of a procedural rule that will guide lower courts in the administration of justice in all aspects of the [adjudicatory] process." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 768, 91 A.3d 862 (2014). Indeed, "the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of [this court's] supervisory powers." (Internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 498, 102 A.3d 52 (2014).

We recently reemphasized the fact that three criteria must be met before we will consider invoking our supervisory authority. *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 311 Conn. 155–61. First, the record must be adequate for review. Id., 155. Second, all parties must be afforded an opportunity to be heard on the issue. Id., 156. Third, an unpreserved issue will not be considered where its review would prejudice a party. Id. If these three threshold considerations are satisfied, the reviewing court next considers whether one of the following three circumstances exists: (1) the parties do not object; (2) the party that would benefit from the application of this court's supervisory powers cannot prevail; or (3) a claim of exceptional circumstances is presented that justifies deviation from the general rule that unpreserved claims will not be reviewed. Id., 158–61.

It is clear that the three threshold requirements have been satisfied in the present case. Just as the record was adequate to consider the respondent's due process claim, it is also adequate to consider whether this court should adopt a rule requiring a canvass in trials for termination of parental rights pursuant to its supervisory power. Specifically, the issues regarding whether the respondent chose to waive her right to offer her own testimony or that of other witnesses on her behalf, challenge any evidence, or cross-examine witnesses is evident from the transcript of the trial. Further, the second predicate requirement is satisfied because the parties have been afforded the opportunity to brief the issue. Finally, the petitioner will not be prejudiced if this court were to rely on its supervisory power to adopt the suggested canvass rule. If such canvasses are required, there would have been nothing that the petitioner could have done to prevent such a canvass, even if she had known about the rule at the time that trial counsel agreed on the summary proceeding. This

proposed canvass rule does not present a situation where the parties are prejudiced because, had they been aware of a new rule, they would have presented additional evidence or prepared their case in a different manner. Thus, the three predicate requirements are met for the invocation of the rule.

We next consider whether there are exceptional circumstances that would justify review of this unpreserved claim. In this regard, we note that delineating the circumstances in which a trial court is obligated to canvass a parent personally regarding her right to contest the petitioner's allegations against her at trial, as well as determining what the scope that such a canvass must be, are the type of "exceptional circumstances" in which this court has previously invoked its supervisory authority. For instance, in *State* v. *Connor*, 292 Conn. 483, 518–19, 973 A.2d 627 (2009), this court employed its supervisory authority to require a trial court to canvass defendants who have been found competent to stand trial to assess whether they also were competent to conduct the trial proceedings without counsel. Further, in *State* v. *Gore*, 288 Conn. 770, 778, 955 A.2d 1 (2008), we invoked our supervisory power to require, in the absence of a written waiver, a canvass of the defendant briefly to ensure that his or her personal waiver of a jury trial is made knowingly, intelligently, and voluntarily. Also, in *Duperry* v. *Solnit*, 261 Conn. 309, 329, 803 A.2d 287 (2002), we exercised our supervisory authority to require that in all future cases in which a defendant pleads not guilty by reason of mental disease or defect, the trial court must canvass the defendant to ensure that his plea is made voluntarily and with a full understanding of the consequences. We exercised our supervisory authority in the aforementioned cases to ensure " 'the fair and just administration of [justice]' "; *State* v. *Connor*, supra, 518–19 n.23; " 'to guide the [trial] courts' "; *State* v. *Gore*, supra, 787; and "in light of concerns of fundamental fairness . . . ." *Duperry* v. *Solnit*, supra, 326–27. In all three of these cases, the canvass rules were deemed not to be constitutionally compelled. Like the rights in *Connor*, *Gore*, and *Duperry*, the respondent in the present case was faced with the loss of core fundamental rights—her fundamental parental rights and right to family integrity—that were placed in jeopardy through the use of an adjudicatory procedure that failed to ensure that she understood the significant risks of proceeding as she did. Also, like *Gore*, which involved the waiver of the jury trial, and like *Duperry*, which involved the entry of a plea, the result in the present case was that the trial was not an adversary proceeding. Although the petitioner points to the fact that counsel for the respondent commented on certain language in an exhibit, those comments of counsel did not serve as evidence or convert this summary proceeding into an adversarial one.

It is significant that Connecticut requires its trial

courts to canvass, inter alia, parents pleading nolo contendere in a neglect or termination proceeding; Practice Book § 35a-1; criminal defendants waiving their right to a jury trial; see *State* v. *Gore*, supra, 288 Conn. 786–87; criminal defendants who have been found competent to stand trial but wish to represent themselves at that trial; see *State* v. *Connor*, supra, 292 Conn. 518–19; and criminal defendants regarding their plea of not guilty by reason of mental defect where the state does not challenge that claim; see *Duperry* v. *Solnit*, supra, 261 Conn. 329; all circumstances that lead to the loss of significant personal rights. We conclude, therefore, that this case involves exceptional circumstances requiring that we employ our supervisory power.

"In utilizing our supervisory powers, we [have] emphasized that [a]n important function of this court is to ensure public confidence in the integrity of the judicial system. This confidence is enhanced through the enactment of rules that safeguard the fairness of our system of justice." (Internal quotation marks omitted.) *State* v. *Elson*, supra, 311 Conn. 773. Furthermore, "[w]e are aware of no principle that would bar us from exercising our supervisory authority to craft a remedy that might extend beyond the constitutional minimum . . . ." *State* v. *Rose*, supra, 305 Conn. 607. "[T]his court ordinarily [invokes its] supervisory powers to enunciate a rule that is not constitutionally required but that [it thinks] is preferable as a matter of policy." (Emphasis omitted; internal quotation marks omitted.) Id., 608.

In the present case we have concluded that the respondent, who was represented by counsel, was not constitutionally entitled to a canvass regarding her trial counsel's strategy and the decision not to contest evidence presented by the petitioner. Nevertheless, we recognize that the lack of a canvass of all parents in a parental rights termination trial may give the appearance of unfairness insofar as it may indicate a lack of concern over a parent's rights and understanding of the consequences of the proceeding. Therefore, we conclude that public confidence in the integrity of the judicial system would be enhanced by a rule requiring a brief canvass of all parents immediately before a parental rights termination trial so as to ensure that the parents understand the trial process, their rights during the trial and the potential consequences.

We also note that the canvass that we require differs from that the respondent claims is constitutionally mandated. The canvass we require today will be given to all parents involved in a termination trial, not just those whose attorneys choose not to contest evidence. Indeed, we require that the canvass be performed at the very start of the termination trial, before a decision as to whether to challenge evidence has been communicated to the court. In so doing, the canvass we require does not single out those parents whose attorneys have

made a tactical decision not to contest the evidence presented. As a result, the canvass we require does not interfere with the attorney-client relationship but serves to inform and protect *all* parents.

Indeed, the provision of our rules of practice which requires a trial court to canvass a parent pleading nolo contendere in a neglect or termination proceeding is instructive here. See Practice Book § 35a-1 (b). The existence of such a requirement demonstrates that the judges of the Superior Court thought it was important that "[t]he judicial authority shall determine whether a noncustodial parent or guardian standing silent understands the consequences of standing silent." Practice Book § 35a-1 (b). Similarly, by exercising our supervisory authority in the present case, we are promoting public confidence in the process by ensuring that all parents involved in parental termination proceedings fully understand their right to participate and the consequences of the proceeding. We conclude, therefore, that it is proper to exercise our supervisory power in the present case and require that, in all termination proceedings, the trial court must canvass the respondent prior to the start of the trial. The canvass need not be lengthy as long as the court is convinced that the respondent fully understands his or her rights. In the canvass, the respondent should be advised of: (1) the nature of the termination of parental rights proceeding and the legal effect thereof if a judgment is entered terminating parental rights; (2) the respondent's right to defend against the accusations; (3) the respondent's right to confront and cross-examine witnesses; (4) the respondent's right to object to the admission of exhibits; (5) the respondent's right to present evidence opposing the allegations; (6) the respondent's right to representation by counsel; (7) the respondent's right to testify on his or her own behalf; and (8) if the respondent does not intend to testify, he or she should also be advised that if requested by the petitioner, or the court is so inclined, the court may take an adverse inference from his or her failure to testify, and explain the significance of that inference. Finally, the respondent should be advised that if he or she does not present any witnesses on his or her behalf, object to exhibits, or cross-examine witnesses, the court will decide the matter based upon the evidence presented during trial. The court should then inquire whether the respondent understands his or her rights and whether there are any questions. This canvass will ensure that the respondent is fully aware of his or her rights at the commencement of the trial. It will neither materially delay the termination proceeding nor unduly burden the state.

We reject the petitioner's argument that this canvass will involve the court in counsel's trial strategy because the canvass merely constitutes an advisement to the respondent of his or her rights regarding the trial. In fact, as explained previously in this opinion, trial courts

frequently canvass parties in other circumstances, such as when a parent pleads nolo contendere in a neglect or termination proceeding, a criminal defendant waives his or her right to a jury trial, a criminal defendant wishes to represent himself or herself, or when a criminal defendant pleads not guilty by reason of mental defect. Therefore, the claim that a canvass unduly interferes with trial strategy is unavailing. We recognize that there may be rare instances wherein counsel may not actively participate in the trial because the petitioner has no or insufficient evidence to support the grounds claimed. Further, there may be substantial reasons why counsel does not wish to call his or her client to testify. We do not agree, however, that the advisement which we impose today will interfere with trial strategy, nor do we contemplate a situation where a respondent will be able to interrupt the trial if his or her counsel does not object to a certain exhibit or piece of testimony. Further, although we appreciate the petitioner's concern that the Rules Committee of the Superior Court and other parties experienced in termination proceedings were not consulted before implementing this rule, we are mindful that proceedings before the Rules Committee of the Superior Court take time. Because the parental rights involved in such a canvass are so important in ensuring the fairness of the process, we do not believe it would be prudent to require that the public wait for the adoption of a new rule of practice. We conclude, therefore, that imposing the canvass rule announced today is an appropriate exercise of our supervisory authority.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgments of the trial court and to remand the case to the trial court for further proceedings consistent with this opinion.

In this opinion ROGERS, C. J., and PALMER, McDONALD and VERTEFEUILLE, Js., concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] We note that the trial court also terminated the parental rights of the respondent father. He did not, however, appeal from those judgments. See *In re Yasiel R.*, 151 Conn. App. 710, 712 n.1, 94 A.3d 1278 (2014). For the sake of simplicity, we hereinafter refer to the respondent mother as the respondent.

[2] We granted certification as to the following two issues: (1) "Did the Appellate Court properly construe the third prong of *State* v. *Golding*, [supra, 213 Conn. 239–40], to require that there be binding precedent that is directly on point for a constitutional violation clearly to exist such that relief can be afforded to the [respondent]?"; and (2) "Does the due process clause of the fourteenth amendment to the United States constitution require that a trial court canvass a parent personally about his or her decision not to contest the exhibits presented to the court against him or her in a parental termination proceeding?" *In re Yasiel R.*, 314 Conn. 907, 99 A.3d 1169 (2014).

[3] As we explain later in this opinion, although the issue regarding the exercise of our supervisory authority was not certified for appeal, after oral argument, the court requested that the parties submit supplemental briefing

on this question.

[4] "The petitioner does not cite to the record or append any relevant transcript to her appellate brief to support the aforementioned statement. The respondent does not, however, dispute that this [advisement] occurred." *In re Yasiel R.*, supra, 151 Conn. App. 713 n.3.

[5] "According to the [trial] court's November 13, 2012 memorandum of decision, the respondent had a history of mental health issues, addiction problems, educational deficits, and a dysfunctional family origin. Her counsel thus wanted to emphasize that the respondent had stabilized her life by securing employment and housing." *In re Yasiel R.*, supra, 151 Conn. App. 713 n.4.

[6] "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail. . . . *State* v. *Lavigne*, 307 Conn. 592, 599, 57 A.3d 332 (2012)." (Internal quotation marks omitted.) *In re Yasiel R.*, supra, 151 Conn. App. 721 n.7.

[7] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without the process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[8] The cases from other jurisdictions cited by the respondent in support of her position are easily distinguishable from the case at bar. See *Thompson* v. *Clark County Division of Family & Children*, 791 N.E.2d 792 (Ind. App.) (reversing judgment terminating parental rights where trial court had performed truncated hearing in which summaries of testimony were offered in lieu of testimony), transfer denied, 804 N.E.2d 755 (Ind. 2003); *State ex rel. Children, Youth & Families Dept.* v. *Stella P.*, 127 N.M. 699, 986 P.2d 495 (1999) (reversing judgment terminating parental rights where respondent mother did not attend her termination of parental rights trial and her attorney and guardian ad litem both neglected to inform court that respondent mother objected to termination of her parental rights); *In re Etter*, 134 Ohio App. 3d 484, 731 N.E.2d 694 (1998) (reversing judgment terminating parental rights where mother's attorney and guardian ad litem admitted to permanent custody petition and trial court did not personally canvass mother concerning this admission in violation of Ohio law); *State ex rel. Dept. of Human Services* v. *Sumpter*, 201 Or. App. 79, 83, 116 P.3d 942 (2005) (reversing judgment terminating mother's parental rights where trial court entered stipulated judgment " 'voluntarily' " terminating mother's parental rights, but did not canvass mother or her guardian ad litem at subsequent hearing); *In re Termination of Parental Rights to Idella W.*, 288 Wis. 2d 504, 708 N.W.2d 698 (2005) (vacating order terminating parental rights where father was federal prisoner in witness protection program and was not brought by federal authorities to court for his termination trial and only participated by telephone).